**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| **Shawn Carstensen Hays, Individually and on Behalf of All Others Similarly Situated,** | **CASE NO.: 1:20-cv-01948** **Hon. Daniel D. Domenico** |
| **Plaintiff(s),** | |
| **v.** | |
| **Pfizer Inc., and** **Meridian Medical Technologies, Inc.,** | |
| **Defendant(s)** | |

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT

**Table of Contents**

INTRODUCTION AND BACKGROUND ..................................................................2

STANDARD OF REVIEW ....................................................................................4

ARGUMENT ....................................................................................................4

I.      Plaintiff Fails to State a RICO Claim..............................................................4

        A.      Plaintiff Has Not Plausibly Pled that Defendants Caused Her
                Alleged Injury. ...................................................................................5

        B.      Plaintiff Fails to Allege Racketeering Activity.....................................11

        C.      Plaintiff Fails to Allege a RICO Enterprise, or that Defendants
                Conducted the Affairs of One. ............................................................13

II.     Plaintiff's Claim Is Time-Barred...................................................................15

        A.      Plaintiff's Claim, if Any, Accrued Before July 2016. .........................16

        B.      Plaintiff Fails to Adequately Plead Any Equitable Tolling
                Doctrine...........................................................................................18

CONCLUSION................................................................................................20

Defendants Pfizer Inc. and Meridian Medical Technologies, Inc. ("Meridian," together, "Pfizer"), by and through undersigned counsel, respectfully submit this Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6), and state as follows:

## CERTIFICATE OF CONFERRAL

In accordance with DDD Civ. P.S. III(D)(1), counsel conferred with Plaintiff on September 10.  On September 14, Plaintiff indicated that it opposed the Motion and did not intend to amend the Complaint.

## INTRODUCTION AND BACKGROUND

This case is a misuse of the federal RICO statute in an untimely attempt to capitalize on publicity surrounding the EpiPen® ("EpiPen") Auto-Injector and the EpiPen litigation pending in Kansas.[1]  Plaintiff asserts that Defendants defrauded the U.S. Food and Drug Administration ("FDA") and consumers by misrepresenting the "true" shelf-life of EpiPen to cause patients to replace their EpiPens more frequently than medically necessary.  This novel theory is facially meritless for at least two reasons.  *First,* Plaintiff fails to plead *any* of the required elements to establish her RICO claim.  The materials incorporated into the Complaint show that Defendants in fact sought a *longer* EpiPen shelf-life but FDA rejected the request; it was thus FDA—not Defendants—that caused the reduction in EpiPen's shelf-life.  Further, Plaintiff alleges only lawful, ordinary business activity by Defendants, and her conclusory statements about a "scheme to defraud" do not transform her claim from speculative to plausible.  *Second*, Plaintiff's claim is time-barred under the four-year RICO statute of limitations.  In short, Plaintiff's claim is facially baseless, implausible, and untimely.

---

[1]  *In re EpiPen Marketing, Sales Practices and Antitrust Litig.*, No. 17-cv-2785-DDC-TJJ (D. Kan.).

AMERICAS 103303525

Pfizer manufactures EpiPen through its subsidiary Meridian, and sells it exclusively to non-party Mylan Specialty L.P. ("Mylan"), who since 2007 has held the exclusive right and license to market, distribute, and sell EpiPen in the United States.  Pfizer plays no role in setting the price that consumers pay for EpiPen.  Until 2013, Pfizer was the New Drug Application ("NDA") holder for EpiPen, and was responsible for EpiPen labeling and submitting supporting technical data to FDA.  Plaintiff's theory is that in 2001 Defendants sought, with no medical basis, to shorten EpiPen's shelf-life from 27 to 20 months, and that Mylan lied about EpiPen's "true" shelf-life in certain public statements.  This, Plaintiff alleges, shows a "years-long scheme to defraud" consumers into replacing their EpiPens more frequently.  But the materials Plaintiff incorporates into her Complaint show the very opposite.  In fact, Defendants sought to extend shelf-life based on scientific data, and what Plaintiff characterizes as a "scheme" is nothing more than Defendants' lawful regulatory activity as the EpiPen NDA-holder.[2]

EpiPen is a life-saving, emergency-use-only product, and if the medicament dispensed during a life or death situation has lost its potency due to the device being expired, the consequences could be fatal.  It is thus crucial the manufacturer comply with FDA guidelines on stability and efficacy, and ensure that the product's expiration date is supported by sufficient data.  The *facts* disclosed in the Complaint show Defendants did just that.  Plaintiff's attempt to spin FDA safety compliance into a RICO violation is woefully misguided, as reflected in the skeletal, scattershot Complaint.  The Complaint should be dismissed.

---

[2]   Plaintiff also insinuates—without support—a host of other misconduct by Defendants, hoping something will stick.  *See, e.g.*, Compl. ¶¶ 21, 52–54, 78, 104, 106–08, 152, 170, 172.  These baseless statements suffer from all the deficiencies of Plaintiff's RICO allegations—and more, and dishonor the fundamental pleading requirements of Rules 8(a) and 9(b).

3

## STANDARD OF REVIEW

"A [complaint] ... must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Such claim must be "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To support a RICO claim, a plaintiff must plausibly plead four elements: "(1) conduct (2) of an enterprise (3) through a pattern [at least two predicate acts] (4) of racketeering activity." *Dummar v. Lummis*, 543 F.3d 614, 621 (10th Cir. 2008) (citation omitted); *see also Burnett v. Amrein*, 243 Fed. App'x 393 (10th Cir. 2007) (particularity requirements of Fed. R. Civ. P. 9(b) apply "to RICO predicate acts based on fraud") (citation omitted).  RICO is a fraud statute; "a complaint alleging fraud [must] set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006) (internal quotation marks omitted).  Where the plausibility and particularity requirements of Rules 8(a) and 9(b) are not met, dismissal is proper.  *See Iqbal*, 556 U.S. at 678.

## ARGUMENT

### I.    Plaintiff Fails to State a RICO Claim.

Plaintiff alleges mail and wire fraud.  18 U.S.C. §§ 1341, 1343.  To establish these predicate acts, Plaintiff must allege with particularity (1) a scheme to defraud or obtain property by false pretenses, representations, or promises; (2) an intent to defraud; and (3) use of the mails or wires to execute the scheme.  *United States v. Welch*, 327 F.3d 1081, 1104 (10th Cir. 2003); *United States v. Haber,* 251 F.3d 881, 887 (10th Cir. 2001).  Plaintiff also must plead facts to make plausible that (4) the alleged predicate acts are both the "but for" and proximate *cause* of her alleged injuries.  *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458, 461 (2006).

AMERICAS 103303525

Here, Plaintiff discloses facts establishing that Defendants' conduct was ***not the cause*** of her injury—this alone is fatal to her RICO claim. *Nielsen v. Patriot Grp., LLC*, No. 1:15-CV-00137, 2016 WL 407073, at *4 (D. Utah Feb. 1, 2016) ("[T]he central question [for RICO causation] ... is whether the alleged violation led directly to the plaintiff's injuries.") (citation omitted). Additionally, Plaintiff fails to plausibly allege a scheme (indeed, the sole alleged predicate acts against Defendants—correspondence with FDA—cannot sustain RICO liability as a matter of law[3]) *or* intent to defraud, much less the existence of a RICO enterprise.

## A. Plaintiff Has Not Plausibly Pled that Defendants Caused Her Alleged Injury.

### 1. Documents Incorporated into the Complaint Demonstrate that FDA Required a Shorter Shelf-Life.

Plaintiff alleges that Defendants' "scheme to falsely state the medically necessary shelf-life of the EpiPen and otherwise manipulate EpiPen expiration dates" caused her injury. Compl. ¶ 138. But the documents incorporated into Plaintiff's Complaint show that it was FDA—not Defendants—that imposed a reduction in shelf-life for EpiPen.[4] These documents also show that Meridian advocated *against* reducing shelf-life. While Plaintiff cherry-picks from FDA correspondence, the complete supplemental new drug application ("sNDA") materials relied on by Plaintiff make clear that Defendants' actions did not cause Plaintiff's alleged injury.

---

[3]   Defendants had no involvement in the 2016 congressional hearings or the "My EpiPen Program." Compl. ¶¶ 14, 20, 63–74, 80–81.

[4]   The Court may take judicial notice of documents that are publicly available or incorporated by reference in the complaint. *See Berneike* v. *CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013); *see also Smith v. Sprint/United Mgmt. Co.*, No. 15-cv-00550-WJM-KMT, 2016 U.S. Dist. LEXIS 185346, at *8–9 (D. Colo. May 18, 2016); *Plater-Zyberk v. Abraham*, No. 97-3322, 1998 WL 67545, at *3–4 (E.D. Pa. Feb. 18, 1998). Plaintiff cites Meridian-FDA sNDA correspondence extensively throughout the complaint; this correspondence comprises some of the "predicate acts" upon which Plaintiff bases her RICO claim. Compl. ¶¶ 11, 17, 56–60, 173. Accordingly, these documents are "integral to the complaint" and this Court should consider them on a motion to dismiss. *See Plater-Zyberk*, 1998 WL 67545, at *4.

5

Plaintiff alleges that Meridian submitted an sNDA in November 2001 "to reduce the shelflife of the EpiPen Auto Injector from 27 to 20 months and change the stability protocols." Compl. ¶ 17. Plaintiff ignores that Meridian's sNDA states that "[t]his change in shelf life was *requested by FDA*."[5] The sNDA's attachments show that in May 2001, FDA deemed it appropriate to reduce "the expiration dating period for EpiPen to 20 months," citing concerns over the stability of one ingredient (sodium metabisulfite).[6] In response, Meridian sought a meeting with FDA to discuss the change, and "question[ed] the rationale for this [request] since the drug substance, epinephrine, remains potent and within specification throughout the current shelf life."[7] Plaintiff puts this correspondence with FDA at issue through her references to the sNDA in the complaint. Compl. ¶¶ 11, 17, 56–60, 173. Not only do these incorporated documents establish that FDA initiated the 2001 shelf-life reduction, they also show that Meridian argued *against* it.

Plaintiff also alleges that Defendants "misrepresented" EpiPen's "true" expiration date when it "began telling the public that these products had an expiration date that was only 18 months after the product was manufactured." Compl. ¶ 22, 62, 139–40. Yet again, the referenced documents refute this claim. First, the documents Plaintiff cites confirm that neither Pfizer nor Meridian ever stated that EpiPen shelf-life was 18 months. *See* Compl. ¶¶ 15 n.8, 17 n.12–13, 62–63, 66, 71, 74–77; *infra* at § I.C. Second, in 2007, Meridian submitted stability data to FDA asking to *maintain* a 20-month shelf-life, but FDA responded by "strongly recommend[ing] that the currently approved expiration dating period should be reduced to 18 months."[8] Meridian responded with a 67-page submission, enclosing additional stability data, asking to "maintain the

---

[5]   Exhibit 1 (emphasis added).

[6]   *Id.* at Attachment 1.

[7]   Exhibit 2.

[8]   Exhibit 3.

6

shelf life of the EpiPen ... at the currently approved period of 20 months."[9]  FDA ultimately was satisfied and *permitted Meridian to keep the 20-month shelf-life*.[10]  Put simply, Meridian represented to FDA and consumers accurately that the EpiPen shelf-life was 20 months, not 18 months as Plaintiff alleges, and Meridian's efforts to *maintain* a 20-month shelf-life fly in the face of Plaintiff's allegations of fraud and a "scheme" to shorten shelf-life.

In short, Plaintiff selectively cites Meridian's sNDA submissions and obfuscates the true cause of the changes in shelf-life: FDA.  The sNDA submissions, incorporated into the complaint, unequivocally show that Defendants fought to *maintain* or *extend* the expiration date for EpiPen rather than "fraudulently mislead and deceive payers and patients to purchase EpiPens more often than necessary."  Compl. ¶ 138.  The documents show that FDA acted independently and that its decisions were the cause of reduced EpiPen shelf-life over the years.  *See First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769 (2d Cir. 1994) ("[W]hen factors other than the defendant's fraud are an intervening direct cause of a plaintiff's injury, that same injury cannot be said to have occurred by reason of the defendant's actions."); *see also Icon Health & Fitness, Inc. v. ConsumerAffairs.com*, No. 1:16-cv-00168-DBP, 2018 WL 1183372, at *8 (D. Utah Mar. 6, 2018).  Defendants can be liable for the consequences of only their actions—not those of FDA.  *See First Nationwide*, 27 F.3d at 769; *Marlow v. Allianz Life Ins. Co. of N. Am.*, No. 08-cv-00752-CMA-MJW, 2009 WL 1328636, at *7–8 (D. Colo. May 12, 2009).  Plaintiff's failure to plead RICO causation alone mandates dismissal.

---

[9]    *Id.*

[10]    Exhibit 4.

AMERICAS 103303525

**2.    Defendants' Correspondence with FDA is Protected Government Petitioning Activity.**

Even if Defendants *had* requested that FDA reduce EpiPen shelf-life, such government petitioning is immune from RICO liability under the First Amendment's Petition Clause and thus could not be the legal cause of Plaintiff's alleged harm. *See CSMN Invs., LLC v. Cordillera Metro. Dist.*, 956 F.3d 1276, 1282–83 (10th Cir. 2020); *see also Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972); *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1349–50 (Fed. Cir. 2014); *Sosa v. DirecTV, Inc.*, 437 F.3d 923, 942 (9th Cir. 2006); *In re Humira (Adalimumab) Antitrust Litig.*, No. 19 CV 1873, 2020 WL 3051309, at *10–11 (N.D. Ill. June 8, 2020).

The Meridian-FDA correspondence and Meridian's sNDA are protected under the Petition Clause unless Plaintiff can plausibly show that Meridian's request was a "sham"; i.e., that it was (1) objectively unreasonable *and* (2) propelled by improper subjective intent. *CSMN Invs.*, 956 F.3d at 1283–86 (citing *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., ("PRE")*, 508 U.S. 49, 60–61 (1993)). There is no plausible basis to apply the sham petition exception here: publicly-available documents cited by Plaintiff show that (i) Meridian's sNDA was supported by substantial data and ultimately approved by FDA (i.e., not objectively unreasonable), and (ii) Defendants' intent was to maintain and maximize shelf-life based on said data, not to reduce shelf life as the Complaint asserts; there is nothing subjectively improper about seeking to maintain EpiPen's shelf-life.

**i.    Plaintiff Does Not Allege That Meridian's sNDA Was Objectively Unreasonable.**

Government petitioning is objectively unreasonable where it is "so baseless that no reasonable [petitioner] could realistically expect to secure favorable relief." *PRE*, 508 U.S. at 62.

AMERICAS 103303525

A favorable outcome—as happened here—is indicative of meritorious petitioning and objective reasonableness. *See CSMN Invs.*, 956 F.3d at 1287; *BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 532 (2002); *U.S. Futures Exch., L.L.C. v. Bd. of Trade of the City of Chicago, Inc.*, 953 F.3d 955, 963 (7th Cir. 2020) ("[A] *successful* action self-proves its reasonableness"); *Crocs, Inc. v. Effervescent, Inc.*, 248 F. Supp. 3d 1040, 1055–56 (D. Colo. 2017); *see also PRE*, 508 U.S. at 60 n.5; *In re Humira*, 2020 WL 3051309, at *11.

Plaintiff alleges that Meridian defrauded FDA through its November 2001 sNDA, which was allegedly submitted without "good faith or medical basis." Compl. ¶¶ 57 & n.44, 58–61. Putting aside Meridian's attempts to lobby for longer shelf-life (*supra* § I.A.1), the FDA Approval Package cited by Plaintiff makes clear that FDA's approval was contingent upon independent review of Meridian's supporting documentation. *See* Compl. ¶ 57 n.44. The FDA Approval Package shows that FDA chemist Dr. Chong-Ho Kim performed the review and recommended approval, and such approval was finalized and memorialized by FDA Chemistry Team Leader Dr. Guirag Poochikian approximately five months later. *Id.* Thus, FDA's approval of Meridian's sNDA alone is fatal to Plaintiff's claim because that approval "compels the conclusion" that the sNDA was not objectively baseless. *See In re Humira*, 2020 WL 3051309, at *11.

Even if the sNDA had *not* been approved, Plaintiff still fails to plead that the sNDA was objectively unreasonable. Plaintiff asserts only that Meridian lacked "good faith or medical basis for" the sNDA, but provides no factual support for this conclusory assertion. At best, Plaintiff implies the sNDA was inaccurate, citing studies from 2000, 2015, 2017, and 2019 that suggest the shelf-life of epinephrine could be as long as 29 months. *See* Compl. ¶¶ 94–97. Factual inaccuracy alone does not abrogate objective reasonableness. *See, e.g.*, *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 61 (2d Cir. 2016) (denial of petition based on factual inaccuracies did not affect

9

objective reasonableness).   Moreover, these studies pertain only to the active pharmaceutical ingredient epinephrine—not to the entire medicament solution in EpiPen (which was the focus of both Meridian's data submissions and FDA's independent review).[11]   The studies are thus not on point and, in any event, their weight is undercut by the sNDA's approval by FDA Ph.D. chemists.

> ### ii.      Plaintiff Does Not Allege that Defendants' Subjective Intent in Submitting Its sNDA Was Improper.

Plaintiff also fails to plead *any* facts regarding Defendants' subjective intent.  She does not allege Meridian's sNDA and its supporting data were not genuine or were otherwise intended to achieve fraudulent objectives.  *See, e.g.*, *PRE*, 508 U.S. at 61 (petitioning a sham where subjective intent insincere or dishonest).   Rather, as previously noted, Plaintiff resorts to conclusory statements of bad faith and suggestions that Meridian's sNDA was somehow factually inaccurate compared to certain studies, ignoring its ultimate review and approval by FDA.  *See* Compl. ¶¶ 61, 94–97; *see also PRE*, 508 U.S. at 64–65 (no sham petition where petitioner believed it had some chance of obtaining a favorable result despite unsettled condition of law).[12]  Moreover, ***it was FDA that requested the study and the reduction in shelf-life in the first place***.[13]  Consequently, Petition Clause immunity applies, and Meridian's sNDA cannot be the legal cause of Plaintiff's alleged harm.

---

[11]  *See* Exhibit 1.

[12]  *See supra* § I.A.1.  Unable to allege improper subjective intent, Plaintiff supports her assertion of bad faith by suggesting Meridian obtained a windfall by "hoping" that customers did not use their purchased EpiPens.  *See* Compl. ¶ 99.  Plaintiff offers no supporting facts.  Moreover, these allegations at best support harm resulting from the *outcome* of a government process, not from its use.  *See City of Columbia v. Omni Outdoor Advert.*, 499 U.S. 365, 381 (1991).

[13]  Exhibit 1.

AMERICAS 103303525

**B.      Plaintiff Fails to Allege Racketeering Activity.**

**1.      Plaintiff Fails to Plausibly Allege Mail and Wire Fraud.**

Plaintiff claims Defendants shipped "via interstate mail" EpiPens labeled with "manipulated" expiration dates.  Compl. ¶ 173.  This defies common sense and mischaracterizes regulatory labeling procedure.  Under 21 CFR § 201.17, drug products must display an expiration date that is supported by FDA-reviewed stability data.  FDA *verifies* the data when it reviews an NDA (or sNDA).[14]  As such, and as Plaintiff acknowledges, the 20-month labeled expiration date for EpiPen is what was approved by FDA in 2002.  *See* Compl. ¶ 17 n.6.  Without more, Defendants' use of an FDA-approved label cannot constitute fraud as a matter of law.  In fact, it would violate the Code of Federal Regulations for Defendants to disseminate labelling with another expiration date.  21 CFR §§ 201.137, 166.

Plaintiff also alleges that "Defendants ... used the wires [and mails] in correspondence with the FDA regarding the expiration date of the EpiPen."  *See* Compl. ¶¶ 173a, 173b.  But correspondence with FDA cannot serve as the basis for mail or wire fraud as a matter of law.  "[Drug applications] in the hands of the government and awaiting approval [a]re not 'property' within the meaning of the mail fraud statute" and "FDA cannot have been defrauded of its [drug applications] approvals within the meaning of the federal mail and wire fraud statutes."  *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1137 (4th Cir. 1993) (citation omitted); *see also Cleveland v. United States*, 531 U.S. 12, 18, 27 (2000).  This ends the inquiry.  Meridian's sNDA cannot legally comprise any predicate act of mail or wire fraud.

---

[14]    FDA, *Expiration Dates – Questions and Answers*, https://www.fda.gov/drugs/pharmaceutical-quality-resources/expiration-dates-questions-and-answers.

AMERICAS 103303525

Additionally, Plaintiff's allegations of mail and wire fraud fail because they do not satisfy Rule 9(b)'s particularity requirement. Plaintiff references routine correspondence with FDA over 18 years, but does not identify a *single* false or misleading statement, let alone "set forth the time, place and contents of the false representation." *See George*, 833 F.3d at 1254 (citation omitted); Compl. ¶¶ 11, 17, 57, 58, 59, 60, 61, 82, 90.

### 2. Plaintiff Fails to Allege Defendants' Intent to Defraud.

Plaintiff also fails to allege Defendants' specific intent to defraud FDA or consumers, as required by §§ 1341 and 1343. *Dietz v. Cypress Semicondutor Corp.*, 711 Fed. App'x 478, 483-84 (10th Cir. 2017). As discussed above, Defendants' placement and shipment of an expiration date reflecting EpiPen's shelf-life cannot have been done with an intent to defraud where it was required by FDA and statute.

Again, Plaintiff alleges that there was "no good faith or medical basis" for reducing the EpiPen shelf-life to 20 months. Compl. ¶ 61. In "support," Plaintiff cites journal articles from 2000 and 2015 that she contends show EpiPen's "true" shelf-life is longer than 20 months. Compl. ¶ 3. But Plaintiff does not plead that Defendants *knew* about these articles but ignored them when submitting the allegedly fraudulent sNDA (indeed, some of the articles post-date that sNDA submission), *see Friedlob v. Trustees of Alpine Mut. Fund Trust,* 905 F. Supp. 843, 858–59 (D. Colo. 1995) (requiring actual knowledge of fraud). Moreover, the articles (which are not on point, *supra* § I.A.2.i) do not controvert a 20-month shelf-life, and actually recommend replacing EpiPen *within the FDA-approved expiration period*. *See, e.g.*, Compl. ¶ 94 (citing article recommending "the use of [EpiPen] autoinjectors that have *not expired*"), ¶ 95 (citing article stating "patients should monitor the expiry dates of their [epinephrine auto-injectors ("EAIs")] and replace the EAIs as this date arrives").

AMERICAS 103303525

In sum, Plaintiff's conclusory "no good faith" allegation cannot sustain her RICO fraud claim. *Friedlob*, 905 F. Supp. at 858-59. As mentioned *supra* § I.A.1, the documents Plaintiff cites show that Defendants' intent was to *maintain* and *extend* the shelf-life for EpiPen.[15] Even if they did not, Plaintiff's claim fails because she does not allege Defendants specifically intended to defraud consumers or FDA through the lawful submission of accurate data via an sNDA.[16]

## C.  Plaintiff Fails to Allege a RICO Enterprise, or that Defendants Conducted the Affairs of One.

Plaintiff attempts to allege an "association-in-fact" enterprise between Defendants and Mylan. *See* Compl. ¶ 171.[17] To adequately plead an association-in-fact enterprise, Plaintiff must plead with particularity "at least three structural features: a purpose [of engaging in a course of conduct], relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). Plaintiff fails.

Plaintiff conclusorily alleges that Defendants and Mylan shared a common purpose "to fraudulently mislead and deceive payers and patients to purchase EpiPens more often than necessary," Compl. ¶ 138, but omits any facts about any party's role in achieving that end. Defendants plainly did not aim to "forc[e] patients to purchase EpiPen more often than necessary";

---

[15]  Plaintiff does not allege Defendants manipulated or otherwise omitted any data sNDA; rather, Defendants submitted extensive data to FDA supporting *longer* shelf-life. *Supra* § I.A.1.

[16]  Because Plaintiff has not plausibly pled intent to defraud, her claim independently fails because she did not allege that Pfizer engaged in a "pattern" of racketeering by committing at least two predicate acts. *BancOklahoma Mortg. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1103 (10th Cir. 1999).

[17]  Plaintiff asserts that Pfizer and Mylan "worked so closely on the EpiPen that they have decided to merge," Compl. ¶ 170, but the article Plaintiff cites shows that she is wrong; Mylan is not merging with Pfizer, but rather with Upjohn, an entity that Pfizer is *divesting*. *See* M. Tirrell, *Pfizer will combine its off-patent drug business with Mylan*, CNBC (July 29, 2019) ("Pfizer … plans to divest its off-patent drug business and combine it with generic-drug maker Mylan.").

13

the documents incorporated in the Complaint show Defendants were actively seeking the opposite given FDA's desire to shorten the expiration date.[18]

Nor does Plaintiff explain how the alleged predicate acts comprise a common course of conduct.  Publicly-available information confirms that Mylan lacked involvement with EpiPen in 2001, when the sNDA-at-issue was submitted.[19]  Further, Plaintiff does not even allege Mylan and Defendants made the same statements about EpiPen shelf-life—the alleged representations conflict,[20] making implausible any sort of "common purpose."  *See Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 400 (7th Cir. 2009).  Nor does the Complaint allege Defendants and Mylan coordinated, communicated, or commonly planned to defraud consumers; instead it depicts a routine manufacturer-distributor relationship that is insufficient to establish a RICO claim.  *Robins v. Global Fitness Holdings, LLC*, 838 F. Supp. 2d 631, 652-53 (N.D. Ohio 2012); *BancOklahoma*, 194 F.3d at 1101 ("[Defendants] did nothing more than provide their regular services.").  Equally meritless is Plaintiff's effort to make hay out of the fact that, to coordinate the commercial arrangement, Defendants and Mylan established a "Joint Commercial Committee."  *See* Compl. ¶ 160, n.81.  Such committees are ubiquitous in business and, absent facts suggesting improper action or purpose, cannot salvage a RICO enterprise claim.  *See BancOklahoma*, 194 F.3d at 1100 (no RICO liability for merely providing "goods or services that ultimately benefit the [alleged] enterprise").[21]

---

[18]   *Supra* § I.A.1.

[19]   Mylan only acquired EpiPen U.S. marketing and distribution rights in 2007.  Compl. ¶ 13.

[20]   Defendants: 20 months; Mylan: 12-18 months.

[21]   Plaintiff's § 1962(d) RICO conspiracy claim also fails.  *See Tal*, 453 F.3d at 1270 ("If a plaintiff has no viable claim under § 1962(a), (b), or (c), then its subsection (d) conspiracy claim fails as a matter of law.").  In any event, Plaintiff's "naked assertion of conspiracy" without alleging any sort of agreement between Defendants and Mylan, *see* Compl. at ¶ 136, falls short of any facts to make a RICO conspiracy plausible.  *Twombly*, 550 U.S. at 557.

14

Nor does Plaintiff allege facts to make plausible that Defendants participated in the operation or management of the alleged "EpiPen Sham Expiration Enterprise." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993); *BancOklahoma*, 194 F.3d at 1100; *see* Compl. ¶ 138. Plaintiff merely describes Defendants' conduct regarding their *own* affairs as manufacturer and NDA holder—filing applications with FDA, complying with FDA regulations by labeling EpiPen with FDA-approved shelf-life, and supplying the EpiPen products under contract. Compl. ¶¶ 28, 46, 47; *see Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001). Indeed, Plaintiff alleges not a single fact showing Defendants associating with Mylan beyond an arm's-length manufacturer-distributor relationship, and so fails to explain how Defendants operated the alleged enterprise. Compl. ¶¶ 28, 46–47; *see United Food & Commercial Workers Unions v. Walgreen Co.*, 719 F.3d 849, 853–56 (7th Cir. 2013) (requiring proof of actual illicit activity to sustain RICO claim); *see also Allstate Ins. Co. v. Benhamou*, 190 F. Supp. 3d 631, 655 (S.D. Tex. 2016) ("merely having a business relationship with a RICO enterprise" or "simply contributing to the enterprise" "will not subject one to liability").

Finally, Plaintiff fails to allege that Defendants "have some part in directing [the alleged enterprise's] affairs." *Reves*, 507 U.S at 179. As discussed *supra* § I.A.1, Plaintiff cannot even show that Defendants' conduct *caused* her alleged injury because EpiPen shelf-life is set by FDA's requirements and decisions—so it defies common sense that Defendants somehow "directed" an enterprise to shorten shelf-life.

## II.    Plaintiff's Claim Is Time-Barred.

Plaintiff's claim is also untimely. *Dummar*, 543 F.3d at 619 (RICO claim time-barred where "apparent on the face of the complaint" that the claim accrued outside the limitations period). The civil RICO statute of limitations is four years from the accrual date, which is *either* when the injury occurred *or* when the injury was (or should have been) discovered. *Crowe v.*

15

*Servin*, 723 Fed. Appx. 595, 597 (10th Cir. 2018).   Under either rule, Plaintiff's claim accrued before July 2016 (four years prior to the filing of the Complaint).   As she fails to adequately plead any tolling doctrine, her claim should be dismissed as time-barred.

### A.  Plaintiff's Claim, if Any, Accrued Before July 2016.

The touchstone for accrual of a RICO claim is the occurrence and discovery of the alleged *injury*—not any other elements of the claim.   *Robert L. Kroenlein Trust ex rel. Alden v. Kirchhefer*, 764 F.3d 1268, 1278 (10th Cir. 2014).   Plaintiff contends that her claim accrued when Pfizer announced in August 2018 that it would temporarily extend shelf-life for certain lots of EpiPen, Compl. ¶¶ 111-12, when Defendant's alleged "fraud scheme became clear" and "prove[d]," *id.* ¶¶ 6, 23, and when EpiPen's allegedly scientific shelf-life was "confirm[ed]," *id.* at ¶ 6.   But the law does not require Plaintiff to uncover or "prove" others' complex conspiracy for her claim to accrue—it requires only the discovery of Plaintiff's *own alleged injury*.   Here, Plaintiff should have discovered her alleged injury before July 2016.

Plaintiff alleges that "[d]uring the Class Period" (Nov. 2010-present), she "purchase[d] EpiPens annually."  Compl. ¶ 26.   Thus, Plaintiff purchased EpiPens not just once or twice, but "at all *relevant* times during the Class Period."[22]  *Andropolis v. Red Robin Gourmet Burgers, Inc.*, 505 F. Supp. 2d 662, 676 (D. Colo. 2007) (emphasis in original) (drawing conclusion after plaintiff's identical statement without alleging all relevant purchases).   Under the injury-occurrence rule, Plaintiff's claim accrued no later than 2011 and is therefore untimely.

Plaintiff's RICO claim is likewise untimely under the injury-discovery rule, which asks "not only when a plaintiff actually discovers his injury, but also when a reasonably diligent plaintiff

---

[22]   Plaintiff also alleges her EpiPen purchases "includ[e] but [are] not limited to" one in December 2015 and another in December 2016.  Compl. ¶ 26.

AMERICAS 103303525

would have discovered the injury"—i.e., when the plaintiff received "inquiry notice." *Kroenlein Trust*, 764 F.3d at 1279–80 (there is inquiry notice whenever "significant discrepancies" between representations and realities "exist that would lead a reasonable plaintiff of ordinary intelligence, through the exercise of reasonable due diligence, to discover his or her injury").

Plaintiff was put on inquiry notice before July 2016, when "significant discrepancies" alleged by Plaintiff should have spurred diligent investigation of her alleged injury from *both* the alleged misrepresentation of EpiPen's expiration date *and* the alleged fraudulent submission to FDA.  Plaintiff alleges that Meridian and Mylan "misle[d] and falsely encourage[d] patients to refill EpiPen prescriptions within 18 months, or sooner," when EpiPen's approved shelf-life was 20 months.  Compl. ¶¶ 75–92.  But she cites studies from 2000 and 2015 that she says highlight the discrepancy between the "actual" shelf-life and the labeled shelf-life. Compl. ¶¶ 93–95; *see also* JoNel Aleccia, *King County Drops EpiPen for Cheaper Kit with Same Drug*, SEATTLE TIMES (Jan. 15, 2015), https://www.seattletimes.com/seattle-news/king-county-drops-epipen-for-cheaper-kit-with-same-drug/ (noting shelf-life was one year); Kraig W. Jacobson, M.D., *Ask a Doctor: Is My EpiPen Still Good?*, OAK STREET MEDICAL (Mar. 12, 2013) (EpiPen could "continue to have potency several years past the expiration date").[23]  These should have spurred Plaintiff to investigate her claim before July 2016 during her "annual" EpiPen purchases.  Compl. ¶ 79.  Plaintiff failed to exercise requisite due diligence.

Plaintiff was also on notice before July 2016 regarding her allegation that EpiPens' "true" shelf-life might be longer than what FDA approved.  *See* Compl. ¶¶ 62–81, 173(a).  The publicly-

---

[23]  The discrepancy between 18 months and one year is explained by the shelf-life after manufacture (18 months) and the time it takes for EpiPens to reach pharmacists for disbursement (6 months).  *See* Ronnie Cohen, *EpiPens Should Work at least a While Past Expiration Dates*, Reuters Health (May 8, 2017), https://www.reuters.com/article/us-health-epipens-expiration-idUSKBN1842BW.

AMERICAS 103303525

available FDA submission cited by Plaintiff regarding the 27–20 month shelf-life reduction (which is the basis of her alleged injury) *was submitted in 2001*.  Compl. ¶¶ 56–61, n.43–47.  Plaintiff filed her complaint 19 years later.[24]

There is a common thread among all this publicly available information:  it was all available more than 4 years prior to Plaintiffs' July 2020 Complaint.  Plaintiff cannot claim "reasonable diligence" under such circumstances.

### B.     Plaintiff Fails to Adequately Plead Any Equitable Tolling Doctrine.

Plaintiff's conclusory allusion to fraudulent concealment and other tolling doctrines does not save her untimely claim.  Compl. ¶¶ 115–21.  A litigant seeking equitable tolling must plead with particularity "(1) that [s]he has been pursuing h[er] rights diligently, and (2) that some extraordinary circumstances stood in h[er] way."  *Barnes v. United States*, 776 F.3d 1134, 1150 (10th Cir. 2015); *Crowe v. Servin*, No. 17-cv-01344, 2017 WL 6349717, at *2 (D. Colo. Sept. 8, 2017).  To support fraudulent concealment as an "extraordinary circumstance," a plaintiff must further establish with particularity that (1) the defendant used fraudulent means to conceal, (2) the concealment was successful, and (3) the plaintiff was unable to discover her injury despite due diligence.  *Ballen v. Prudential Bache Sec.*, 23 F.3d 335, 337 (10th Cir. 1994).  Plaintiff fails.

Plaintiff does not plead any affirmative act of concealment that prevented her from discovering her alleged injury.  *See King & King Enters. v. Champlin Petroleum Co.*, 657 F.2d 1147, 1154–55 (10th Cir. 1981).  Plaintiff only cites *publicly-available* correspondence between

---

[24]  Further, Plaintiff references a March 2013 incident where a patient "could have used [an] expired pen" but did not.  Compl. ¶ 21 (citing a publicly-available ABC News story).  Additionally, the My EpiPen Email Program, which Mylan is accused of using to improperly "remind[]" patients "to refill their prescription before their EpiPens expire," was live as early as July 2014.  *See* Compl. ¶ 81; Mylan, *My EpiPen*, EpiPen.com (Jul. 5, 2014), https://web.archive.org/web/20140705180232/https://www.epipen.com/en/my-epipen.

AMERICAS 103303525

Pfizer and FDA, Compl. ¶¶ 56–61, n.43–47, as well as publicly-available "published medical literature" from 2000 and 2015, Compl. ¶¶ 93-95.  All this information was available to Plaintiff well before July 2016.  *Dummar*, 543 F.3d at 622; *accord Kroenlein v. Kirchhefer*, No. 11-CV-284, 2013 WL 1337385, at *7 (D. Wyo. Mar. 31, 2013) (no fraudulent concealment because "no reason or facts" "to show why what was discovered in the fall of 2007 was not discoverable" earlier).  Plaintiff cannot show that Defendants affirmatively concealed any material information she needed to bring her claim.

Nor does Plaintiff describe with particularity what efforts she made to diligently pursue her claim—a fatal omission for civil RICO claims.  *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 195–96 (1997); *see also Kroenlein Trust*, 764 F.3d at 1282 ("A plaintiff must exercise due diligence to discover the fraud even if the defendant is actively attempting to conceal it.").  Plaintiff does not describe any diligence efforts before July 2016, even though she was on inquiry notice.[25]  *See, e.g.*, Compl. ¶¶ 8 n.4, 20 n.20, 49 n.33, 94 n.64, 95 n.65.  Hence, Plaintiff is not entitled to any equitable tolling.[26]

Finally, Plaintiff alleges Defendants' underlying conduct has been continuing and the statute of limitations does not start to run until that conduct ceases.  Compl. ¶ 122.  She effectively

---

[25] Plaintiff also fails to explain with particularity why she waited two years to file after allegedly discovering Defendants' fraud in August 2018.  Compl. ¶ 111; *see In re Lamictal Indirect Purchaser & Antitrust Consumer Litig.*, 172 F. Supp. 3d 724, 746 (D.N.J. 2016) ("The 'burden is on the plaintiffs to establish that the action was brought within a reasonable time after the facts giving rise to the estoppel have ceased to be operational.'") (citation omitted); *Gaiman v. McFarlane*, 360 F.3d 644, 656 (7th Cir. 2004) (after learning of a claim, plaintiff "must sue as soon as it is feasible to do so").

[26] Plaintiff urges the Court to toll the statute of limitations because Defendants' conspiracy was "self-concealing," dispensing with the need for her to plead affirmative acts of concealment.  Compl. ¶¶ 117–18.  The Tenth Circuit has never recognized this standard; indeed, it has expressly declined to apply it.  *Colorado ex rel. Woodard v. Western Paving Constr. Co.*, 841 F.2d 1025 (10th Cir. 1988).  Furthermore, the paucity of Plaintiff's pleadings cuts against adopting a laxer fraudulent concealment standard.  *Klehr*, 521 U.S. at 195–96.

AMERICAS 103303525

attempts to resurrect the "last predicate act" rule, *see Armstrong v. Wyo. Dep't of Envtl. Quality*, 674 Fed. Appx. 842, 846 (10th Cir. 2017), which the Supreme Court has renounced, *Klehr*, 521 U.S. at 187.[27]  Plaintiff's attempt to make up for her years of inaction falls flat; her RICO claim is untimely.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion and dismiss the Complaint.

---

[27]  As the Supreme Court noted, the "last predicate act" rule "conflicts with a basic objective—repose—that underlies limitations periods," and "would permit plaintiffs who know of the defendant's pattern of activity simply to wait, 'sleeping on their rights,' as the pattern continues and treble damages accumulate, perhaps bringing suit only long after the 'memories of witnesses have faded or evidence is lost.'"  *Klehr*, 521 U.S. at 187.

AMERICAS 103303525

Dated: September 21, 2020 WHITE & CASE LLP

By:   /s/ *Raj S. Gandesha*

Raj S. Gandesha
Edward Thrasher
Kathryn Swisher
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
Phone:   (212) 819-8200
Fax:   (212) 354-8113
E-mail:

rgandesha@whitecase.com
edward.thrasher@whitecase.com
kathryn.swisher@whitecase.com

AND

S. Kirk Ingebretsen, #11444
Kali R. Backer, #45436
SHOOK, HARDY, & BACON LLP
1660 17th Street, Suite 450
Denver, Colorado 80202-1254
Phone:   (303) 285-5300
Fax:   (303) 285-5301
Email:

kingebretson@shb.com
kbacker@shb.com

*Attorneys for Defendants Pfizer Inc. and Meridian Medical Technologies, Inc.*

AMERICAS 103303525

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).  Pursuant to D. Colo. L.R. 17(c), I further certify that this brief comprises 5,948 words.

*/s/ Raj S. Gandesha*
RAJ S. GANDESHA

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 21, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to parties and attorneys who are filing users.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

*/s/ Raj S. Gandesha*_____
RAJ S. GANDESHA